IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
FORT WORTH DIVISION

| | |
|---|---|
| DEBRA OJEDA, § | |
| PLAINTIFF, § | |
| § | |
| VS. § | CIVIL ACTION NO. 3:24-CV-00431-BJ |
| § | |
| COMMISIONER OF § | |
| SOCIAL SECURITY, § | |
| DEFENDANT. § | |

# MEMORANDUM OPINION AND ORDER

## I.   STATEMENT OF THE CASE

Plaintiff Debra Ojeda ("Ojeda") filed this action pursuant to Sections 405(g) and 1383(c)(3) of Title 42 of the United States Code for judicial review of a final decision of the Commissioner of Social Security denying her claims for disability insurance benefits ("DIB") and supplemental security income ("SSI") under Titles II and XVI of the Social Security Act ("SSA"). Ojeda protectively applied for DIB on August 24, 2021, alleging that she became disabled on June 11, 2021. (Transcript ("Tr.") 201–16). On August 10, 2022, Ojeda protectively filed for SSI, alleging the same onset date of disability. (Tr. 217). After her applications for benefits were denied both initially and on reconsideration, Ojeda requested a hearing before an Administrative Law Judge ("ALJ"). (Tr. 103–12, 122–29, 130-31). The ALJ held a hearing by telephone on September 5, 2023, and issued an unfavorable decision on October 10, 2023. (Tr. 11–32, 33–62). On January 18, 2024, the Appeals Council denied Ojeda's request for review, leaving the ALJ's decision as the final decision of the Commissioner in this case. (Tr. 1–6). Ojeda subsequently filed this civil action seeking review of the ALJ's decision. (ECF No. 1).

## II. STANDARD OF REVIEW

Disability insurance is governed by Title II, 42 U.S.C. § 404 *et seq.* of the SSA. In addition, numerous regulatory provisions govern disability insurance benefits. *See* 20 C.F.R. Pt. 404. Supplemental security income is governed by Title XVI, 42 U.S.C. § 416 *et seq.* of the SSA, in addition to numerous regulatory provisions. *See* 20 C.F.R. Pt. 416. Although technically governed by different statutes and regulations, "[t]he law and regulations governing the determination of disability are the same for both disability insurance benefits and SSI." *Greenspan v. Shalala*, 38 F.3d 232, 236 (5th Cir. 1994).

The SSA defines "disability" as a "medically determinable physical or mental impairment" lasting at least twelve months that prevents the claimant from in engaging in substantial or gainful activity. 42 U.S.C. §§ 423(d), 1382c(a)(3)(A); *McQueen v. Apfel*, 168 F.3d 152, 154 (5th Cir. 1999). To determine whether a claimant is disabled, and thus entitled to disability benefits, a five-step analysis is employed. 20 C.F.R. § 404.1520(4). First, if a claimant is presently engaging in any substantial gainful activity, a finding of not disabled will be made. *Id.* Substantial gainful activity is defined as work activity involving the use of significant physical or mental abilities for pay or profit. 20 C.F.R. § 404.1572. Second, the claimant must have an impairment or combination of impairments that is considered "severe." 20 C.F.R. § 404.1520(c); *see also Stone v. Heckler*, 752 F.2d 1099, 1101 (5th Cir. 1985), *cited in Loza v. Apfel*, 219 F.3d 378, 392 (5th Cir. 2000). Third, disability will be found if the impairment or combination of impairments "meets or equals" an impairment listed in the Listing of Impairments ("Listing"), 20 C.F.R. Pt. 404, Subpt. P, App. 1. 20 C.F.R. § 404.1520(d). Fourth, if disability cannot be found based on the claimant's medical status alone, it must be determined whether the impairment or combination of impairments prevent the claimant from returning to the claimant's past relevant work. 20 C.F.R. §§

404.1520(a)(4)(iv), (f). At the fifth and final step, the impairment or impairments must prevent the claimant from doing any other work, considering the claimant's residual functional capacity ("RFC"), age, education, and past work experience. *Id.* §§ 404.1520(g), 416.920(f); *see also Crowley v. Apfel*, 197 F.3d 194, 197-98 (5th Cir. 1999). At steps one through four, the burden of proof rests upon the claimant to show she is disabled. *Crowley*, 197 F.3d at 198. If the claimant satisfies this responsibility, the burden shifts to the Commissioner to show that there is other gainful employment the claimant can perform despite her existing impairments. *Id.* If the Commissioner meets this burden, the burden of proof shifts back to the claimant to rebut the Commissioner's findings. *Id.*

A denial of disability benefits is reviewed only to determine whether the Commissioner applied the correct legal standards and whether the decision is supported by substantial evidence in the record as a whole. *Leggett v. Chater*, 67 F.3d 558, 564 (5th Cir. 1995); *Hollis v. Bowen*, 837 F.2d 1378, 1382 (5th Cir. 1988). Substantial evidence is such relevant evidence as a reasonable mind might accept to support a conclusion. *Boyd v. Apfel*, 239 F.3d 698, 704 (5th Cir. 2001). It is more than a mere scintilla of evidence, but less than a preponderance. *Id.* A finding of no substantial evidence is appropriate only if no credibly evidentiary sources or medical findings support the decision. *Id.* The Court may neither reweigh the evidence in the record nor substitute its judgment for the Commissioner's, but it will scrutinize the record to determine if the evidence is present. *Harris v. Apfel*, 209 F.3d 413, 417 (5th Cir. 2000); *Hollis*, 837 F.2d at 1383.[1]

---

[1] There are four elements of proof that must be weighed in determining whether substantial evidence of disability exists: (1) objective medical facts; (2) diagnoses and opinions of treating and examining physicians; (3) the claimant's subjective evidence of pain and disability; and (4) the claimant's age, education, and work history. *See Wren v. Sullivan*, 925 F.2d 123, 126 (5th Cir. 1991).

3

### III.  ISSUES

In her brief, Ojeda presents the following issues:

1. Whether the ALJ failed to apply the appropriate legal standard at Step Two; and

2. Whether the ALJ's RFC determination is fatally flawed because it is not supported by substantial evidence.

(Plaintiff's Brief ("Pl.'s Br.") at 1).

### IV.  ALJ DECISION

In his October 10, 2023 decision, the ALJ found that Ojeda met the insured status requirements of the SSA through June 30, 2026, and had not engaged in substantial gainful activity since June 11, 2021, the alleged onset date of Ojeda's disability. (Tr. 16).  At Step Two, the ALJ found that the claimant had the following severe impairments: "major depressive disorder; and generalized anxiety disorder." (Tr. 17 (emphasis omitted)).  The ALJ considered and determined that the following impairments were not severe: prior history of heart failure, hypertension, hyperlipidemia, diabetes mellitus, gout, obesity, and arthritis. (Tr. 17–18).  Next, at Step Three, the ALJ determined that the claimant did not have an impairment or combination of impairments that met or was medically equivalent to the severity of one of the impairments in the Listing. (Tr. 18–20.)  As to the claimant's RFC, the ALJ stated:

> After careful consideration of the entire record, the undersigned finds that the claimant has the residual functional capacity to perform a full-range of work at all exertional levels with the following non-exertional limitations: she can understand, remember, and carry out instructions that are detailed but not complex, make related decisions, and attend and concentrate for extended periods; she can adapt to occasional change in a routine work setting; she can have occasional interactions with supervisors and co-workers; and she can have no interactions with the public.

(Tr. 20 (emphasis omitted); *see* Tr. 20–26).

At Step Four, the ALJ found that Ojeda was unable to perform any of her past relevant work. (Tr. 26–27). However, at Step Five, the ALJ found that there were jobs "that exist in significant numbers in the national economy that the claimant can perform." (Tr. 27–28 (emphasis omitted)). Accordingly, the ALJ concluded that Ojeda was not disabled as defined under the SSA from the alleged onset date of June 11, 2021, through the date of the decision. (Tr. 28).

## V.   DISCUSSION

### A. The ALJ Applied the Correct Legal Standard at Step Two

As set out above, the first issue is whether the ALJ applied the appropriate legal standard at Step Two. To evaluate whether a claimant's medical condition qualifies as a "severe impairment" at Step Two, the Commissioner has issued regulations that defined a "severe impairment" as one that "significantly limits [a claimant's] physical or mental ability to do basic work activities." 20 C.F.R. § 404.1520(c). As Ojeda correctly notes in her brief, the Fifth Circuit has held that a literal application of that definition is inconsistent with the statutory language and legislative history of the SSA. *See Stone*, 752 F.2d at 1104–05. As a result, under Fifth Circuit precedent, a claimant's impairment is severe when it is more than a "slight abnormality" having "such minimal effect on the individual that it would not be expected to interfere with the individual's ability to work, irrespective of age, education, or work experience." *Id.* at 1101.

Ojeda contends that the ALJ erred by failing to find that some of his impairments are severe because the ALJ failed to cite *Stone* and, thus, applied the wrong legal definition of severe. (Pl.'s Br. at 7–9). However, the Fifth Circuit has held that Social Security Ruling ("SSR") 85-28 is consistent with *Stone* and an ALJ may fulfill his duty, to show that he applied the correct standard, by citing to SSR 85-28. *See Keel v. Saul*, 986 F.3d 551, 556 (5th Cir. 2021) (holding that "[t]hough the precise wording differs, *Stone* and SSR 85-28 are not substantially different enough to warrant a finding of error."). In this case, the ALJ cited to and applied the definition of severe found in

5

SSR 85-28. (Tr. 17–18). Consequently, the ALJ did not commit reversable error by failing to cite *Stone,* and remand is not required for this issue.

### B. The ALJ's RFC Determination

As discussed above, the second issue before the Court is whether the ALJ's RFC determination is supported by substantial evidence. Ojeda argues that the ALJ's RFC determination is not supported by substantial evidence because "no medical source provides support for the RFC's omission of any physical limitations." (Pl.'s Br. at 10). Specifically, Ojeda claims that the ALJ committed a *Ripley* error as "[n]o medical opinion evidence supports the ALJ's finding, which indicates the ALJ used his own expertise to arrive at the findings," because the "SAMC doctors conclude[ed] that Plaintiff is limited to medium work." (Pl.'s Br. at 10–11).

#### 1. The ALJ's RFC determination is not supported by substantial evidence

*Ripley* stands for the proposition that reversible error lies where the "record does not clearly establish" how an applicant's condition affects her ability to work. *Thornhill v. Colvin*, No. 3:14-cv-335-M, 2015 WL 232844, at *10 (N.D. Tex. Dec. 15, 2014) (quoting *Ripley*, 67 F.3d at 557), *R & R adopted*, 2015 WL 232844 (N.D. Tex. Jan. 16, 2015). The claimant in *Thornhill* alleged disability from depression, but the ALJ found the claimant to be "not disabled." *Id.* at *1. Finding the *Thornhill* claimant's symptoms mild, the ALJ determined than the claimant was less limited than did a registered nurse, physician, and licensed professional counselor, but more limited than did two SAMCs. *Id.* at *9. The RFC determination in *Thornhill* reflected an ability to work but was erroneous to the extent that it "added mental limitations . . . to accommodate for [the claimant's] mild symptoms." *Id.* at *10. Even though adding mental limitations suggested that the ALJ was "simply giving [the claimant] the benefit of the doubt as to what limitations might apply," the only supporting evidence was progress notes that did not address the claimant's ability to work. *Id. Thornhill* held that while the ALJ could depart from the relevant medical opinions,

6

it then "became incumbent upon the ALJ to obtain an expert medical opinion" to fill the gap. *Id.* (citing *Ripley*, 67 F.3d at 557). In *Ripley*, *Thornhill*, and their progeny, the ALJ's failure to obtain a medical opinion addressing how the respective claimants' impairments affected their ability to work warranted reversal and remand in each instance. *See Ripley*, 67 F.3d at 557-58; *Thornhill*, 2015 WL 232844, at *11; *Kirkland v. Comm'r of Soc. Sec.*, No. 4:22-cv-759-O-BP, 2023 WL 3357597 (N.D. Tex. Apr. 25, 2023), *R & R adopted*, No. 4:22-cv-759-O-BP, 2023 WL 3362633 (N.D. Tex. May 10, 2023).

RFC is what an individual can still do despite her limitations. SSR 96-8p, 1996 WL 374184, at *2 (July 2, 1996). It reflects the individual's maximum remaining ability to do sustained work activity in an ordinary work setting on a regular and continuing basis. *Id.*; *see Myers v. Apfel*, 238 F.3d 617, 620 (5th Cir. 2001). A regular and continuing basis is an eight-hour day, five days a week, or an equivalent schedule. SSR 96-8p, 1996 WL 374184, at *2. RFC is not the least an individual can do but the most. *Id.* The RFC is a function-by-function assessment, with both exertional and non-exertional factors to be considered, and it is based upon all of the relevant evidence in the case record. *Id.* at 3–6. The responsibility for determining a claimant's RFC lies with the ALJ. *See Villa v. Sullivan*, 895 F.2d 1019, 1023–24 (5th Cir. 1990). The ALJ must discuss the claimant's ability to perform sustained work activity on a regular and continuing basis and resolve any inconsistencies in the evidence. SSR 96-8p, 1996 WL 374184, at *7.

In making the RFC assessment, the ALJ must consider all symptoms, including pain, and the extent to which these symptoms can be reasonably accepted as consistent with objective medical evidence and other evidence. *See* 20 C.F.R. § 404.1529; SSR 16-3p, 2017 WL 5180304, at *1 (Oct. 25, 2017); SSR 96-8p, 1996 WL 374184, at *5. The ALJ must also consider limitations and restrictions imposed by all of an individual's impairments, even impairments that are not

7

severe. *See* SSR 96-8p, 1996 WL 374184, at *5. The ALJ may draw reasonable inferences from the evidence in making his decision, but the social security ruling also cautions that presumptions, speculation, and supposition do not constitute evidence. *See, e.g.*, SSR 86-8, 1986 WL 68636, at *8 (1986), *superseded by* SSR 91-7c, 1991 WL 231791, at *1 (Aug. 1, 1991) (changing the ruling only to the extent the SSR discusses the former procedures used to determine disability in children).

The ALJ is not required to incorporate limitations in the RFC that he did not find the record supported. *See Muse v. Sullivan*, 925 F.2d 785, 790 (5th Cir. 1991) ("The ALJ as factfinder has the sole responsibility for weighing the evidence and may choose whichever physician's diagnosis is most supported by the record."). In reviewing the ALJ's decision, a finding of no substantial evidence is appropriate only if no credible evidentiary choices or medical findings support the decision. *Boyd*, 239 F.3d at 704.

In this case, as stated above, the ALJ found that Ojeda was able to "perform a full-range of work at all exertional levels" but that she had the following non-exertional limitations: "she can understand, remember, and carry out instructions that are detailed but not complex, make related decisions, and attend and concentrate for extended periods; she can adapt to occasional change in a routine work setting; she can have occasional interactions with supervisors and co-workers; and she can have no interactions with the public." (Tr. 20 (emphasis omitted)). In making his RFC determination, the ALJ considered the opinions of state agency physicians Timothy Honigman, M.D, and Phillip Matar, M.D., as well as other medical evidence in the record, stating:

> On April 21, 2022, internal medicine State agency physician Timothy Honigman, M.D. opined that the claimant could perform medium work activity (Ex.1A/5). Then, on March 20, 2023, internal medicine State agency physician Phillip Matar, M.D. affirmed Dr. Honigmna's opinion (Ex.4A/5-6; Ex.6A/5-6). Considering the totality of the evidence, the record supports that the claimant's medically determinable physical impairments are nonsevere. This is consistent with

8

and supported by the predominantly normal physical examination findings and physician observations (see Ex.1F/4-5 on February 28, 2022; Ex.4F/7 on August 1, 2022; Ex.4F/47 on November 8, 2022; Ex.4F/75-76 on March 27, 2023; Ex.6F/11 on May 9, 2023). Moreover, as discussed above in Finding No. 3, these physical impairments are generally controlled with treatment. Thus, Dr. Honigman's and Dr. Matar's opinions are unpersuasive as they are inconsistent with and unsupported by the evidence of record.

The undersigned considered the consultative examinations at Exhibits 1F and 2F, but the physicians did not provide opinions to consider for persuasive value.

(Tr. 25).

ALJ's are no longer required to give controlling weight to a treating physician's opinion, as was previously mandated by case law and regulations. *Compare* 20 C.F.R. § 404.1527 (2016), *with* 20 C.F.R. § 404.1520c; *see also* 82 Fed. Reg. 5853 (Jan. 18, 2017) (commenting that the change was intended to enable courts to focus on the content of the evidence rather than the source). Instead, ALJ's must consider a list of factors in determining what weight, if any, to give a medical opinion. 20 C.F.R. § 404.1520c. In this case, the ALJ rejected both of the SAMCs' medical opinions regarding Ojeda's physical limitations after citing to multiple medical sources that indicated "predominantly normal" physical examination findings and physician observations, noting that all of claimant's physical impairments appear to be generally controlled with medication, and finding that Ojeda's testimony was inconsistent with the alleged limitations. (Tr. 25 (citing to Tr. 348–49, 370, 410, 438–39; 498).

The Court finds persuasive the analysis from a number of district courts throughout the Fifth Circuit that have continued to consider whether the ALJ impermissibly relied on his or her lay opinion to form an RFC. *See, e.g., Barbara H. v. Kijakazi*, No. 3:20-cv-1890-X, 2022 WL 300541, at *4 (N.D. Tex. Jan. 12, 2022) ("Here, the ALJ rejected all the medical expert evidence concerning the effects of [the plaintiff's] impairments and determined [the plaintiff's] RFC based on his own evaluation of findings from [the plaintiff's] various physical exams, tests, and readings.

9

This RFC determination is not supported by substantial evidence.") (collecting cases)); *Lopez v. Saul*, No. SA-19-cv-01088, 2020 WL 4934462, at *4 (W.D. Tex. Aug. 22, 2020) ("Where 'the ALJ rejects the only medical opinions of record, interprets the raw medical data, and imposes a different RFC, the ALJ has committed reversible error.'") (quoting *Garcia v. Berryhill*, No. EP-17-CV-00263, 2018 WL 1513688, at *2 (W.D. Tex. Mar. 27, 2018)); *Deborah S. v. Comm'r of Soc. Sec. Admin.*, No. 4:20-cv-1580, 2021 WL 4442514, at *6 (S.D. Tex. Sept. 28, 2021) ("Here, there were no other medical opinions the ALJ considered. In an opinion short on discussion of the medical records, the ALJ improperly substituted his opinion without reasoning and analysis for all four medical opinions to formulate an RFC."). The 2017 regulatory changes, regarding the ALJ's discretion in forming the RFC, do not allow the ALJ to overstep the bounds of a lay person's competence and render a medical judgment. *See Moore v, Saul*, 3:20-cv-161-MPM, 2022 WL 987735 at *2 (N.D. Miss. March 31, 2022) ("And by 'raw medical evidence,' this court is referring to evidence that does not permit 'common-sense judgments about functional capacity' and instead requires the ALJ to 'overstep the bounds of a lay person's competence and render a medical judgment.' . . . A lay person would not readily understand how medical notations about disc bulging and 'moderate facet degenerative changes' impact one's ability to work.") (citing *Minor v. Astrue*, No. 1:13-cv-17, 2014 WL 936438, at *6 (S.D. Miss. March 10, 2014) (citing *Gordils v. Sec'y of Health and Hum. Servs.*, 921 F.2d 327, 329 (1st Cir. 1990))).

Based on this precedent, the Court must consider whether the ALJ impermissibly substituted his lay opinion for those of the SAMCs. "If the ALJ finds no medical opinion of record to be even partially persuasive, there is typically an evidentiary gap in the record between the claimant's raw medical data, impairments, and remaining ability to work." *Miller v. Comm'r of Soc. Sec.*, No. 1:20-cv-194, 2021 WL 7541415, at *9 (S.D. Miss. Dec. 17, 2021), *R. & R.*

*adopted*, 2022 WL 566175 (S.D. Miss. Feb. 24, 2022) (citing *Martin v. Berryhill*, No. 4:19-CV-115-JMV, 2020 WL 5089390, at *3 (N.D. Miss. Aug. 28, 2020)). Therefore, "[u]nless the remaining record 'clearly establish[es]' the effect that the claimant's condition has on her ability to work, the ALJ must fill this gap with another medical opinion." *Id.* (quoting *Ripley*, 67 F.3d at 557); *see also Brian K. L. v. Comm'r of Soc. Sec.*, No. 4:20-cv-2810, 2022 WL 902641, at *6 (S.D. Tex. Mar. 28, 2022) (quoting *Garcia*, 2018 WL 1513688, at *2) ("'Consequently, when the ALJ rejects the only medical opinions of record, interprets the raw medical data, and imposes a different RFC, the ALJ has committed reversible error.'").

In this case, as stated above, the ALJ noted that the SAMCs concluded that Ojeda could perform medium work. The ALJ found both opinions to be entirely unpersuasive because "they are inconsistent with and unsupported by the evidence of record." (Tr. 25). In crafting the RFC, the ALJ rejected all available medical opinions by citing to raw medical data and Ojeda's testimony. Thus, it is evident that the ALJ used his interpretation of the medical evidence to wholly reject the only medical opinions of record. Because there were no other medical opinions for the ALJ to rely on, the Court can only conclude that the ALJ impermissibly substituted his own lay opinion for that of the medical expert opinions of record. Consequently, the Court finds that substantial evidence does not support the ALJ's RFC determination, and the Court must evaluate if such error prejudiced Ojeda.

### 2. The ALJ's error was harmless

"'Procedural perfection in administrative proceedings is not required' as long as 'the substantial rights of a party have not been affected.'" *Audler v. Astrue*, 501 F.3d 446, 448 (5th Cir. 2007) (quoting *Mays v. Bowen*, 837 F.2d 1362, 1364 (5th Cir. 1988) (per curiam)). Accordingly, the Court may not vacate the judgment unless Ojeda shows that she was prejudiced by the ALJ's

11

error. *See Mays*, 837 F.2d at 1364. Prejudice occurs when procedural errors cast doubt on the existence of substantial evidence in support of the ALJ's decision. *See Morris v. Bowen*, 864 F.2d 333, 335 (5th Cir. 1988) (per curiam). Generally, remand is necessary when, as here, the ALJ rejected all available medical opinions, cited raw medical data, and made judgments regarding the claimant's RFC. *See Harris v. Comm'r, Soc. Sec. Admin.*, No. 4:22-CV-487-P, 2023 WL 5826869, at *6 (N.D. Tex. Aug. 22, 2023), *R & R adopted*, No. 4:22-CV-00487-P, 2023 WL 5826975 (N.D. Tex. Sept. 8, 2023) (citing *Beachum v. Berryhill*, No. 1:17-cv-0009, 2018 WL 4560214, at *4 (W.D. Tex. Sept. 21, 2018) (internal citation omitted)).

This case presents a rare exception to that general remand rule as the Court finds that the ALJ's error was harmless. Here, both SAMC opinions, that the ALJ rejected, opined that Ojeda could perform medium level jobs. (Tr. 27–28, 66–67, 78–79). Because the ALJ found that Ojeda was unable to perform her past relevant work, he proceeded to Step Five, where he found that there are jobs that exist in significant numbers in the national economy that Ojeda could perform. (Tr. 26–28). While the ALJ's RFC determination found that Ojeda could perform work at all exertional levels, the three jobs that the ALJ found Ojeda could perform are all medium level jobs. (Tr. 27–28) (listing: (1) Kitchen Helper, DOT: 318.687-010; (2) Janitor, DOT: 381.687-018; and (3) Laundry Worker, DOT: 361.684-014). Therefore, even if the ALJ adopted the conclusions of the SAMC opinions and found that Ojeda could perform medium level work, she would be able to perform all of the jobs that the ALJ listed at Step Five. Consequently, the Court finds that the ALJ's error was harmless and does not warrant remand.

## VI. CONCLUSION

Based on the foregoing, the Commissioner's decision is **AFFIRMED.**

SIGNED July 31, 2024.

_____
JEFFREY L. CURETON
UNITED STATES MAGISTRATE JUDGE